UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CANDIDO ALVA DIAZ,          )
Institutional ID No. 21455-047,    )
                          )
          Plaintiff,     )
                          )
v.                      )      CIVIL ACTION NO.
                          )      5:13-CV-130-BG
KERRY DIXON,           )      ECF
Warden, *et al.*,         )
                          )
         Defendants.    )

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Candido Alva Diaz filed this action complaining of events that occurred during his incarceration at the Giles W. Dalby Correctional Facility (Dalby Facility), a private correctional facility operated by Management Training Corporation pursuant to a contract with the Federal Bureau of Prisons (BOP). Diaz claims that Defendants acted with deliberate indifference to his serious medical needs during his incarceration at Dalby Facility. He seeks compensatory damages, punitive damages, and declaratory and injunctive relief.

The United States District Court transferred this case to the undersigned United States Magistrate Judge for further proceedings. The undersigned thereafter reviewed authenticated records from Dalby Facility. After filing his Complaint, Diaz was released from Dalby Facility to the Bureau of Immigration and Customs Enforcement; thereafter, the undersigned ordered Diaz to complete a Questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Diaz timely returned the completed Questionnaire to the U.S. District Clerk, but he did not consent to proceed before the undersigned magistrate judge. Pursuant to the order of transfer, the undersigned

now files this Report and Recommendation.

I.      **Standard of Review**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2013). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a frivolous determination, the court may consider reliable evidence such as the plaintiff's allegations, sworn testimony obtained at a *Spears* hearing, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings).

II.     **Diaz's Claims**

In his Complaint and Questionnaire responses, Diaz claims that he received inadequate medical care, which caused him rectal bleeding and resulted in a delayed medical diagnosis, while at the Dalby Facility. Specifically, Diaz claims that the Dalby Facility Administration refused to refer him to an outside specialist in order to determine the cause of his rectal bleeding, despite the recommendation of the medical department.

III.    **Discussion**

As an initial consideration, Diaz filed his Complaint on a form used for claims brought

2

pursuant to 42 U.S.C. § 1983.  Section 1983 "provides a cause of action against state actors who violate an individual's rights under federal law."  *Filarsky v. Delia*, - - -U.S.- - -, 132 S. Ct. 1657, 1660, 182 L. Ed. 2d 662 (2012).  None of the defendants Diaz names are state actors.  Courts, however, must hold a *pro se* litigant's complaint to less stringent standards than a lawyer's formally drafted pleading.  *See Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  Because Diaz complains of constitutional violations that allegedly occurred during his incarceration as a federal prisoner, the court construes his claims as brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).  *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994) (construing a federal prisoner's civil rights complaint as an action brought pursuant to *Bivens*).

Similar to a suit brought pursuant to § 1983 against state actors, the United States Supreme Court in *Bivens* first recognized a cause of action for money damages against federal officials alleged to have committed constitutional violations.  *Bivens*, 403 U.S. at 389.  The purpose of *Bivens* is to deter, by threat of suit, individual federal officers from abusing their constitutional authority and engaging in unconstitutional acts.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001).  However, where existing processes—such as state and federal tort claims, suits for injunctive relief, or prison administrative procedures—provide for formal review of prison practices and remediation, the Supreme Court has been hesitant to extend *Bivens* liability.  *See id.* at 72–74 (declining to extend *Bivens* to allow an implied damages remedy against private entities acting under color of federal law; for example, a privately-operated federal prison).

Specifically, the Supreme Court declined to imply a *Bivens* action against personnel of a

privately-operated federal prison where state tort law provided an adequate alternative remedy for the claimed Eighth Amendment violations. *See Minneci v. Pollard*, - - -U.S.- - -, 132 S. Ct. 617, 623–26, 181 L. Ed. 2d 606 (2012). Thus, a federal prisoner bringing suit for damages against employees of a privately-operated federal prison must look to state tort law for redress when the conduct at issue falls within its scope. *See id.* at 626. The remedies available through *Bivens* and state tort law "need not be perfectly congruent" so long as they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment" and "roughly similar compensation to victims. . . ." *Id.* at 625.

In the instant case, Diaz alleges that the Dalby Facility and Warden Dixon—a privately-operated federal prison and an employee—denied him adequate medical care. Under Texas law, a prisoner alleging Eighth Amendment violations may bring an action for monetary damages against a prison employee. *See Birdo v. Debose*, 819 S.W.2d 212, 215–16 (Tex. App.—Waco 1991, no writ). Further, inmates may pursue medical malpractice claims against prison healthcare providers. *See Tejada v. Gernale*, 363 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (denying summary judgment and allowing a former inmate's medical malpractice action to proceed). Because Texas tort law provides an adequate alternative remedy, *Bivens* does not authorize an action for monetary damages against Dalby Facility and Warden Dixon based on a claim of inadequate medical care. *See Minneci*, 132 S. Ct. at 626.

Diaz's claim for injunctive relief, on the other hand, is not barred under *Bivens* or *Minneci*. *See Malesko*, 534 U.S. at 74 (distinguishing the *Bivens* remedy from suits for injunctive relief, which have "long been recognized as the proper means for preventing entities from acting unconstitutionally"). Federal inmates may sue to enjoin prison officials from violating their

4

constitutional rights.  *See Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (construing federal

inmate's *pro se* complaint as "requesting injunctive relief from violation of his federal constitutional

rights").  However, Diaz's claim for injunctive relief became moot upon his release from the Dalby

Facility.  *See e.g.*, *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (noting the "transfer of a

prisoner out of an institution often will render his claims for injunctive relief moot"); *Herman v.

Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding plaintiff's transfer from the allegedly offending

facility to another facility "rendered his claims for declaratory and injunctive relief moot").

Even assuming Diaz could pursue his claims, his allegations fail to state an Eighth

Amendment violation.  Under the Eighth Amendment, prison officials have a duty to provide

adequate medical care.  *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v.

Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).  To allege a constitutional

violation, an inmate must show that the prison official acted with deliberate indifference toward his

serious medical needs, resulting in an unnecessary and wanton infliction of pain.  *Id.*  Deliberate

indifference includes both an objective and a subjective component.  *Id.* at 410.  The inmate must

show objective exposure to a substantial risk of serious bodily harm.  *Gobert v. Caldwell*, 463 F.3d

339, 345–46 (5th Cir. 2006).  Once established, a prison official may be held liable if he (1) knew

of the substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable

measures to alleviate it.  *Id.*  In sum, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837.

Diaz claims that despite multiple oral requests and one written complaint, Warden Dixon

refused to send him to an outside physician in order to determine the cause of his rectal bleeding.

He further states that when he reported to the medical desk at Dalby Facility, the staff did not know his personal circumstances or what medications he was to receive.  He alleges that after leaving Dalby Facility, his outside physician informed him that the bleeding was a consequence of lack of appropriate medical care and proper nutrition.   He claims that as a result of the delayed diagnosis, his rectal bleeding continued.  His outside physician prescribed three types of medication that treat gastrointestinal disorders including pantoprazole and a type of omeprazole.  He states that although the treatment has temporarily improved his symptoms, he will eventually have to undergo surgery.

According to authenticated medical records from Dalby Facility, Diaz did not complain of rectal bleeding until April 2012.  In late April 2012, Diaz complained of blood in his stool.  The physician noted that Diaz denied abdominal pain, nausea, vomiting, and hemorrhoids.  Diaz was ordered to report to medical to check his stool for blood for three days.  His stool was positive the following day, and Diaz did not show up the next two days.  In May, Diaz again saw a physician regarding rectal bleeding, and he was again ordered to report to medical to check his stool for blood for three days.  Diaz did not show up for the first two days, but it was positive on the third day.  In June, Diaz had a follow-up appointment with a physician and underwent a blood panel test.  Later that month, Diaz was diagnosed with gastritis and prescribed Zantac, which treats heartburn with acid indigestion.  He also underwent a hepatitis blood panel test.

The medical records do not indicate that Diaz again complained of symptoms until October, when he complained of right side abdominal pain and requested x-rays.  Diaz thereafter underwent x-rays of his lumbar spine and colon.  The report revealed no abnormalities in Diaz's colon, and the impression was constipation.  Diaz did not report to medical again until four months later at the end of February 2013, when he again complained of rectal bleeding.  The physician recommended that

he avoid hot peppers and prescribed Prilosec to treat acid reflux and heartburn.  Diaz also underwent another blood panel test in February.  He continued to complain of blood in his stools into March, and a treatment plan recommended that he undergo a colonoscopy.  In April, Dalby Facility's Utilization Review Board deferred the request because Diaz's blood work levels were normal and he was to be released from Dalby Facility within three months.  The review board suggested monitoring Diaz and resubmitting the request if his blood levels dropped.  A physician renewed Diaz's prescription for Prilosec at the end of April, noting that Diaz reported that he thought the medication helped sometimes.  The medical records do not indicate that Diaz sought further treatment prior to his release from Dalby Facility in June 2013.

The authenticated records indicate that Diaz received timely and appropriate medical care in regard to his complaints.  *See Gobert*, 463 F.3d at 346 (noting a showing of deliberate indifference requires evidence of wanton disregard for serious medical needs, such as ignoring an inmate's complaints, refusing treatment, or intentionally providing improper treatment). During the time that Diaz complained of rectal bleeding, medical staff ordered and evaluated blood panel tests and x-rays and prescribed medications.  *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (noting "records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference").  He was diagnosed with gastritis and constipation and treated with Zantac and Prilosec, both of which treat gastrointestinal disorders. Of note, Prilosec is a type of omeprazole and both Zantac and pantoprazole treat gastroesophageal reflux.  Thus, the medication that Diaz was prescribed by his outside physician after leaving Dalby Facility corresponds to the treatment that Diaz was given while incarcerated—both prison physicians and Diaz's private physicians prescribed medications for treating gastrointestinal disorders and

gastroesophageal reflux.

In sum, Diaz's medical records indicate that he "was afforded extensive medical care by prison officials" and his medical records, together with his statements, fail to show that medical staff demonstrated deliberate indifference to his medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Banuelos*, 41 F.3d at 235 (finding medical examination and radiologist report rebutted inmate's claim of deliberate indifference). Diaz has not alleged that anyone at the Dalby Facility engaged in the "egregious intentional conduct required to satisfy the exacting deliberate indifference standard." *Gobert*, 463 F.3d at 351–52 (describing the inmate's extensive record of medical treatment and noting the lack of evidence to establish culpable intent). On the contrary, medical staff addressed Diaz's complaints and attempted to alleviate his symptoms by prescribing medication when appropriate. Ongoing and responsive treatment, although ineffective, does not rise to the level of deliberate indifference. *See Norton*, 122 F.3d at 291–92.

## IV.   <u>Recommendation</u>

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Diaz's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), and deny any pending motions.

Dismissal of this action should count as a qualifying dismissal—"a strike"—for purposes of the three strikes provision of the Prison Litigation and Reform Act (PLRA). Further, the dismissal should not release Diaz or the institution of his incarceration from the obligation to pay the previously imposed filing fee. *See Williams v. Roberts*, 166 F.3d 1126, 1128 (5th Cir. 1997). Diaz must therefore continue to pay the filing fee in monthly installments as ordered in the PLRA Filing Fee Order entered in this case.

**V.**     **<u>Right to Object</u>**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          January 29, 2014.

NANCY M. KOENIG
United States Magistrate Judge